# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **RICHARD A. MAYERS,** )<br>　　No. 347890, )<br>　　　　　　　　　　　　 )<br>　　**Plaintiff,** )<br>　　　　　　　　　　　　 )<br>v. 　　　　　　　　　　　 )<br>　　　　　　　　　　　　 )<br>**JOEY BOYD,** *et al,*　　　 )<br>　　　　　　　　　　　　 )<br>　　**Defendants.** | NO. 3:16-cv-00071<br>JUDGE CRENSHAW |

## M E M O R A N D U M

Richard A. Myers, an inmate of the West Tennessee State Penitentiary (WTSP) in Henning, Tennessee, filed this *pro se, in forma pauperis* civil rights action pursuant to 42 U.S.C. § 1983. (Docket No. 1).

**I.     Background**

By Order entered on February 29, 2016, the Court granted the Plaintiff's application to proceed *in forma pauperis*, granted the Plaintiff's motion to voluntarily dismiss the Tennessee Department of Corrections (TDOC) as a Defendant, and dismissed TDOC as a Defendant to this action. (Docket No. 18). In the same Order, the Court also granted the Plaintiff's motion to file an amended complaint. (Id.) Subsequently, the Plaintiff submitted two letters to the Court (Docket Nos. 20 & 21), a motion for enlargement of time (Docket No. 22), a motion for temporary restraining order (Docket No. 23), a declaration (Docket No. 24), a motion "to proceed with U.S. Marshal's receivership with urgency" (Docket No. 25); an "Instant Motion" asking the Court to permit digital, audio, and video amendments of the Plaintiff's pleadings (Docket No. 27), a motion to appoint counsel (Docket No. 28), the Amended Complaint (Docket No. 29), a motion "for Court

1

to Order TDOC/Commissioner Schofield to comply with its own policy #509.03" (Docket No. 33), and a "Summary" (Docket No. 34).

The Amended Complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

## II.     PLRA Standard

Pursuant to 28 U.S.C. § 1915(e)(2), the Court is required to conduct an initial review of the Amended Complaint filed *in forma pauperis*, and to dismiss it if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.  In reviewing the Complaint to determine whether it states a plausible claim, "a district court must (1) view the [Amended Complaint] in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  However, "a court cannot create a claim which [a plaintiff] has not spelled out in his pleading." Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. Jan. 31, 2011).

## III.    Section 1983 Standard

Here, the Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983.  Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583 (6th

Cir. 2012). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." Tahfs v. Proctor, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

IV.     **Allegations of the Amended Complaint**

Plaintiff alleges that the WTSP staff Defendants have confiscated his legal documents, denied him needed medical treatment, denied him the opportunity to use the telephone for a period of six weeks, refused to provide him with adequate materials to draft legal papers, and denied him access to a law library. The Plaintiff also alleges that he was assaulted on January 15, 2016, by unspecified Defendants. He asks to be transferred to the Lois DeBerry Special Needs Facility where he believes he will receive needed medical treatment and be safe.

In addition, the Plaintiff alleges that his guilty plea of November 20, 2014, in an unspecified criminal case should be vacated and that his sentence in that case is illegal. The Plaintiff alleges that, "going back to 1989," numerous local, state, and federal officials conspired to bring harm to the Plaintiff while he served as a confidential informant. He seeks immediate release from custody. (Docket No. 29).

V.     **PLRA Screening**

  A.     **Precluded claims and Defendants**

A review of the Court's records shows that, on June 5, 2014, the Plaintiff brought an action alleging some of the same claims as those raised in the instant Amended Complaint against at least ten (10) of the same Defendants named in the present action: Matthew Ellis, Joey Boyd, Ronnie Williams, Russ Winkler, George Hurst, Robert (Bob) Watson, Jeff Kerr, Brian McCatharenes,

Derrick Schofield, and members of the 20th Judicial Drug Task Force. See Richard A. Mayers v. Joey Boyd, et al., No. 3:14-cv-01560 (M.D. Tenn. 2014)(Trauger, J.). In that case, after screening the complaint as required by the PLRA, the Court dismissed with prejudice the Plaintiff's claims against the Millersville Police Department, the 20th Judicial District Drug Task Force, and Joey Boyd, finding that those Defendants were either immune from or not subject to suit under § 1983. (No. 3:14-cv-01560, Docket Nos. 11 and 12). The Court subsequently granted summary judgment in the Defendants' favor on the Plaintiff's § 1983 excessive force claims against Defendants Ronnie Williams, Robert Watson, Jeff Kerr, George Hurst, and Brian McCatharenes. (Id., Docket No. 143). Further, because the Plaintiff failed to effect timely service upon Defendants Matthew Ellis and Russ Winkler, the Court dismissed the Plaintiff's claims as to those Defendants. (Id.) The Court's final order in the 2014 case dismissed the action "with prejudice in its entirety." (Id.)

The broad doctrine of *res judicata* encompasses both claim preclusion (*res judicata*) and issue preclusion (collateral estoppel). J.Z.G. Res., Inc. v. Shelby Ins. Co., 84 F.3d 211, 214 (6th Cir. 1996). Under claim preclusion, a final judgment on the merits bars any and all claims by the parties or their privies based on the same cause of action, as to every matter actually litigated, as well as every theory of recovery that could have been presented. Id. Under issue preclusion, once an issue actually is determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action when used against any party to the prior litigation. Montana v. United States, 440 U.S. 147, 152-54 (1979). Dismissal with prejudice is considered a final judgment on the merits for purposes of *res judicata*. See Haddad v. Mich. Nat'l Corp., 34 Fed. Appx. 217, 218 (6th Cir. 2002)(citing Matter of W. Tex. Mktg. Corp., 12 F.3d 487, 501 (5th Cir. 1994)).

After reviewing the Amended Complaint, it appears that the Plaintiff has restated the same or similar allegations stemming from the Plaintiff's arrest on August 15, 2013, and the alleged criminal conspiracy to violate the Plaintiff's civil rights. The Plaintiff raised these claims in his 2014 federal civil rights lawsuit. In fact, a large section of the Amended Complaint is devoted to a rehashing of the same allegations pertaining to the alleged criminal conspiracy against the Plaintiff. As to Defendants Matthew Ellis, Joey Boyd, Ronnie Williams, Russ Winkler, George Hurst, Robert (Bob) Watson, Jeff Kerr, Brian McCatharenes, Derrick Schofield, and members of the 20th Judicial Drug Task Force, the Court already has rendered a final decision on the merits regarding the Plaintiff's claims. As a result, those claims are barred by the doctrine of *res judicata*. Additionally, all theories of recovery related to the same incidents that could have been presented to the court in the Plaintiff's prior § 1983 lawsuit are barred by the doctrine of *res judicata*. Therefore, to the extent that the Amended Complaint seeks relief against any Defendant for alleged excessive force in the accomplishment of the Plaintiff's arrest on August 15, 2013, or for his or her role in an alleged criminal conspiracy among Defendants to violate the Plaintiff's civil rights, these claims are barred and cannot be raised in this action. Those claims must be dismissed.

### B.    Denial of medical treatment claims

The Eighth Amendment "forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference towards his serious medical need." Reilly v. Vadlamundi, 680 F.3d 617, 623 (6th Cir. 2012). "First, a plaintiff must plead facts which, if true establish a sufficiently serious medical need." Id. at 624. A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even a layman would recognize care is required. Blackmore v. Kalamazoo County, 390 F.3d 890, 897 (6th Cir. 2004). Second, a plaintiff must establish the subjective component, i.e., the defendant

5

acted with a sufficiently culpable state of mind in denying medical care. Reilly, 680 F.3d at 624. A prison official's deliberate indifference to serious medical needs of prisoners will violate the Eighth Amendments proscription against cruel and unusual punishment and is actionable under 42 U.S.C. § 1983. Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976). "Deliberate indifference is characterized by obduracy or wantonness—it cannot be predicated on negligence, inadvertence, or good faith error." Reilly, 680 F.3d at 624. "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106.

The Plaintiff, who uses a wheelchair, alleges that he suffers from the serious medical conditions of colon cancer and liver disease. Thus, he has satisfied the first element of an Eighth Amendment medical claim. Next, the Plaintiff alleges that the Defendants[1] are denying medical treatment for these conditions and, as a result, he is "in serious immediate trouble" because his weight recently rapidly dropped from 230 pounds to 175 pounds. (Docket No. 29 at p. 25). The Plaintiff alleges that the Defendants are intentionally withholding treatment from the Plaintiff. (Id. at p. 34). The Court finds that, for purposes of the required screening under the PLRA, the Plaintiff's allegations are sufficient to state Eighth Amendment claims based on the denied of appropriate medical treatment for the Plaintiff's cancer and liver disease.

---

[1] The Plaintiff alleges that the "staff here at Supermax as well as Mark McGrady" (Docket No. 29 at p. 27) are the Defendants to these allegations, although the Plaintiff does not name Mark McGrady in his list of thirty-six (36) Defendants set forth in his amended complaint. The Plaintiff identifies the following Defendants as employees of, or alleged policy-makers associated with, the Plaintiff's current facility of confinement: Warden James Holloway, Assistant Warden Johnny Fitz, Chief of Security f/n/u Middleton, IRC f/n/u Agnew, Corrections Officer f/n/u Jones, Corrections Officer Jubilant Deberry, Unit Manager Sharon Rose, IRC f/n/u Parker, Sergeant f/n/u Bartlett, Commissioner f/n/u Fisher, TDOC Commissioner Derrick Schofield, and TDOC Assistant Commissioner Tony Parker. (Id. at pp. 1-2).

### C. Restrictions on telephone calls

"[W]hile prisoners retain the right to communicate with friends, family, and counsel while in prison, they do not have a right to unlimited telephone calls." Washington v. Reno, 35 F.3d 1093, 1099 (6th Cir. 1994). The Plaintiff alleges that he has not been permitted to make any telephone calls for the past six weeks at the WTSP. "[A] prisoner's right to telephone access is subject to rational limitations in the face of legitimate security interests of the penal institution. The exact nature of telephone service to be provided to inmates is generally to be determined by prison administrators, subject to court scrutiny for unreasonable restrictions." Id. (internal punctuation and citations omitted).

The Court finds that, for the purposes of the PLRA initial screening, the Plaintiff's allegations state colorable claims under the First Amendment for the unreasonable restriction or impairment of the Plaintiff's constitutional right to communicate with family, friends, and counsel. Ultimately, the Defendants may prove that the denial of the Plaintiff's telephone privileges for a six-week period was a reasonable restriction on his First Amendment rights under the circumstances, but at this stage a response by Defendants is required.

### D. Denial of access to the courts

The law is well settled that a prisoner has a First Amendment right of access to the courts. Bounds v. Smith, 430 U.S. 817, 821-23 (1977). The right of access to the courts requires prison officials to ensure that inmates have access to the courts that is "adequate, effective and meaningful." Id. at 822. To ensure the meaningful exercise of this right, prison officials are under an affirmative obligation to provide inmates with access to an adequate law library, Walker v. Mintzes, 771 F.2d 920, 931 (6th Cir. 1985), or some alternative form of legal assistance, Procunier

v. Martinez, 416 U.S. 396, 419 (1974)(overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989)). Meaningful access varies with the circumstances, and prison officials are accorded discretion in determining how that right is to be administered. Bounds, 430 U.S. at 830-31. However, it is not enough for a plaintiff simply to claim that he was denied access to the courts, or that he did not have access to an adequate law library or to some alternate form of legal assistance. To state a claim on which relief may be granted, a plaintiff must show that a defendant's conduct in some way prejudiced the filing or prosecution of a legal matter. Walker, 771 F.2d at 932; Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996).

In this case, the Plaintiff alleges that Defendants are denying him access to paper, pencils, and legal reference materials. The Plaintiff states that he was able to submit his latest court filings only because certain corrections officers sneaked legal reference materials to him and that he found additional sheets of paper. He states that he is writing with a "stub" of a pencil and that the Defendants refuse to provide him with a pen.

The Plaintiff has not alleged that he has been prejudiced in filing this instant lawsuit or has suffered any litigation related detriment to either this case or another case. The Plaintiff has submitted a thirty-eight (38) page Amended Complaint and multiple motions. The Plaintiff presents no evidence that having access only to a pencil has impeded his ability to file grievances or lawsuits. While he claims that he would have filed certain documents more quickly had he not been denied court access, he has not pointed to anything specific to demonstrate that he incurred a legal detriment to this lawsuit. Thus, although Defendant's might be well-advised to provide Plaintiff writing instruments to avoid future problems, Plaintiff has not shown that he sustained an actual injury in his efforts to litigate. He fails to state a claim for denial of his right of access to the courts. The Plaintiff's denial of access to courts claims will be dismissed.

### E. Excessive force claim

The Amended Complaint alleges that the Plaintiff was assaulted by an unidentified Defendant or Defendants on January 15, 2016. (Docket No. 29 at p. 34). According to the Plaintiff, this type of aggression against the Plaintiff "has been going on for years." (Id.)

The Fourth Amendment of the United States Constitution protects individuals from excessive force by law-enforcement personnel. *Watkins v. City of Southfield*, 221 F.3d 883, 887 (6th Cir. 2000). The Court reviews claims for excessive force under a standard of reasonableness. *Saucier v. Katz*, 533 U.S. 194, 209 (2001). Accordingly, the Court views the use of force from the perspective of a reasonable law-enforcement officer on the scene rather than retrospectively. *Graham v. Connor*, 490 U.S. 386, 396-97(1989). The analysis is to be conducted under the totality of the circumstances and without regard to intentions or motivations. *Id.* at 397. The inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The Court's analysis must "embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

The Court finds that, based on the scant information provided in the Amended Complaint pertaining to the alleged assault in January 2016, the Plaintiff has not stated an actionable excessive force claim under § 1983 at this time. Although the Plaintiff provides a specific date, the Plaintiff does not identify or even describe the perpetrator of the alleged assault. It is unclear whether the Plaintiff alleges that he was assaulted by one of the named Defendants, someone else, or another inmate. While he claims that this kind of aggression towards him has been going on "for years,"

9

he provides no additional support for this conclusory allegation. However, this claim will be dismissed without prejudice should the Plaintiff at some point be able to provide more specific details pertaining to the alleged assault or other assaults.

F. **Other Defendants**

As to any surviving claims, Plaintiff's § 1983 claims for monetary damages against the individual Defendants in their official capacities are barred by the Eleventh Amendment. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 71 (1989). Thus, those claims must be dismissed.

To the extent that the Plaintiff seeks to impose supervisory liability on any of the Defendants, this theory is unworkable because § 1983 liability must be based on more than respondeat superior, or a defendant's right to control employees. Taylor v. Michigan Dep't of Corrections, 69 F.3d 76, 80–81 (6th Cir. 1995): "[P]roof of personal involvement is required for a supervisor to incur personal liability." Miller v. Calhoun County, 408 F.3d 803, 817 n.3 (6th Cir. 2005). However, at this time, the Court is unable to discern from the Plaintiff's lengthy and somewhat confusing Amended Complaint which Defendants played a direct role in the alleged wrongful conduct. Therefore, the Court will not dismiss the supervisory Defendants at this time but the Plaintiff is advised that his claims against these Defendants will be dismissed at a later date absent a showing that each Defendant was personally involved in the alleged denial of the Plaintiff's federal constitutional rights.

G. **Claims for release from custody**

Finally, the Amended Complaint alleges that the Plaintiff is being unlawfully detained by the State of Tennessee. Such claims sound in *habeas corpus* and are not appropriately brought in a § 1983 action. The law is well established that "habeas corpus is the exclusive remedy for a state

prisoner who challenges <u>the fact or duration of his confinement</u>... even though such a claim may come within the literal terms of § 1983." <u>Heck v. Humphrey</u>, 512 U.S. 477, 481 (1994)(citing <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 488-90 (1973))(emphasis added). A § 1983 claim challenging confinement must be dismissed even where a plaintiff seeks only injunctive or monetary relief. <u>Heck</u>, 512 U.S. at 489-90 (claim for damages is not cognizable); <u>Preiser</u>, 411 U.S. at 488-90 (claim for injunctive relief is only cognizable under 28 U.S.C. § 2254).

Additionally, a state prisoner does not state a cognizable claim under § 1983 where a ruling on his claim would imply the invalidity of his conviction and/or confinement, unless and until the conviction has been favorably terminated, *i.e.*, reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of *habeas corpus*. <u>Heck</u>, 512 U.S. at 486-87; <u>Ruff v. Runyon</u>, 258 F.3d 498, 502 (6th Cir. 2001). More recently, the United States Supreme Court extended <u>Heck</u> to bar § 1983 actions that do not directly challenge confinement, such as here, but instead challenge the procedures that imply unlawful confinement. <u>Edwards v. Balisok</u>, 520 U.S. 641, 648 (1997).

Under <u>Heck</u>, the Plaintiff's claims concerning the validity of his plea, his conviction, his sentence, and his continued confinement would be more appropriately brought in a separate petition for writ of *habeas corpus*, not in a civil rights complaint. Those claims will be dismissed <u>without prejudice</u>, should the Plaintiff wish to pursue them via the appropriate legal route.

**VI.     Motion for a Temporary Restraining Order**

The Plaintiff seeks an emergency temporary restraining order (TRO) directing Defendants Schofield and Parker to transfer the Plaintiff from the WTSP to the Lois Deberry Special Needs

11

Facility and to order a physical exam of the Plaintiff to determine the injuries he has allegedly sustained at the hands of WTSP staff. (Docket No. 23).

Rule 65(b) of the Federal Rules of Civil Procedure provides that:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint, that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition[.]

It is a plaintiff's burden to prove he is entitled to a TRO. Helling v. McKinney, 509 U.S. 25, 35, 113 S. Ct. 2475, 125 L.Ed.2d 22 (1998). In determining whether to grant a request for preliminary relief, the following four factors must be considered: (1) whether plaintiff is likely to succeed on the merits; (2) whether plaintiff will suffer irreparable injury in the absence of an injunction; (3) whether the injunction will cause substantial harm to others; and (4) whether the injunction would serve the public interest. Overstreet v. Lexington–Fayette Urban County Gov't, 305 F.3d 566, 573 (6th Cir. 2002) (citations omitted).

On balance, the Plaintiff here has failed to show injunctive relief should be granted. The Plaintiff states that he seeks a TRO enjoining Schofield, Parker, and their agents and employees "to cease and desist in administering physical as well as emotional harm from the senior administration at" WTSP. (Docket No. 23 at p. 1). However, the motion contains no other details supporting the Plaintiff's request. He has not demonstrated that immediate and irreparable harm will occur if injunctive relief is not granted. And, while it appears that no third parties would be harmed if the preliminary injunction were issued, neither does it appear that any public interest

would be served. In short, the Plaintiff has not borne his burden for the issuance of a TRO. The motion will be denied.

**VII.   Motion for Appointment of Counsel**

The Plaintiff has requested the appointment of counsel. (Docket No. 28). He states that he has no legal training or experience and that appointed counsel "would negate to some degree the inherent imbalance between the pro se litigant and trained counsel in the presentation of this cause of action to the court." (Id. at p. 1).

The Supreme Court has held that "an indigent's right to appointed counsel . . . exists only where the litigant may lose his physical liberty if he loses the litigation." Lassiter v. Dep't of Social Servs., 452 U.S. 18, 25 (1981). Thus, unlike criminal proceedings, there is no constitutional right to an appointed counsel in a civil action, such as this action. Willett v. Wells, 469 F. Supp. 748, 751 (E.D. Tenn. 1977), aff'd, 595 F.2d 1227 (6th Cir. 1979); see Williamson v. Autorama, Inc., No. 91-5759, 947 F.2d 947 (6th Cir. 1991)(citing Willett favorably). The appointment of counsel for a civil litigant is a matter within the discretion of the district court and will occur only under exceptional circumstances. Lavado v. Keohane, 992 F.2d 601, 604-05 (6th Cir. 1993).

The Plaintiff's circumstances as described are typical to most prisoners and do not suggest anything exceptional in nature. Therefore, the motion for the appointment of counsel will be denied at this time. Should the Plaintiff's circumstances change over the course of this litigation, he may renew his request for appointment of counsel.

**VIII.   Motion "To Proceed With U.S. Marshals Receivership With Urgency"**

The Plaintiff filed a motion entitled "Instant Motion to Proceed with U.S. Marshals Receivership With Urgency" (Docket No. 25) in which the Plaintiff alleges that he "is now and

has been suffering at the hands of TDOC officials [orchestrated] and directed by other high state officials." (Id. at p. 1). The Plaintiff alleges that he is being denied toilet paper, soap, and writing materials and that his "health and wellbeing are in serious jeopardy as well as his ultimate demise." (Id. at p. 2). The Plaintiff believes that he is in danger because he may be a potential federal witness. (Id.)

As with the Plaintiff's motion for a temporary restraining order, the Plaintiff's allegations set forth in this latest motion (Docket No. 25) are not sufficiently detailed or supported by evidence to justify the relief sought by the Plaintiff. The Plaintiff's concerns regarding his access to the Court have been addressed by the Court herein. If the Plaintiff is denied toilet paper and soap for a significant period of time such that the denial constitutes cruel and unusual punishment, the Plaintiff may seek to add those allegations to action. However, at present this Court would have to create from thin air the details such as – who, what, when, how long, etc. – necessary to consider whether Plaintiff's allegations have merit. If the Plaintiff is truly "suffering at the hands of TDOC officials," then the Plaintiff may petition the Court for relief but he must set forth specific details explaining what is happening to him. For now, the Plaintiff's motion (Docket No. 25) will be denied.

## IX. Motion for Court Order

In his more recently submitted "Motion for Court Order to Order TDOC/Commissioner Schofield To Comply With His Own Policy" (Docket No. 33), the Plaintiff seeks a Court order directing staff at the WTSP to "comply with there [sic] own policy pertaining to indigent legal materials . . . ." (Id. at p. 1). According to the Plaintiff, the staff refuses to provide the Plaintiff with inmate withdrawal slips, claiming that the facility is "out of slips." (Id. at p. 2). These slips are required for an inmate to make copies of legal materials and to send legal mail. (Id.) The

14

Plaintiff further alleges that WTSP denies inmates the ability to speak to their attorneys by telephone and denies inmates, especially those in solitary confinement such as the Plaintiff, the ability to speak with jailhouse lawyers. (Id. at p. 3).

To the extent that the Plaintiff claims that any Defendant is restricting his ability to make telephone calls, the Court has addressed this claim herein and found that the Plaintiff states a colorable claim under the First Amendment. Therefore, this claim will proceed for further development to ensure that the Plaintiff's rights are protected.

Although the Plaintiff contends that WTSP staff refuse to provide him with inmate withdrawal slips, the Plaintiff has successfully submitted multiple documents to the Court within a very short time frame. It does not appear, then, that the Plaintiff's ability to file documents in this case has been limited as a result of a delay in receiving inmate withdrawal slips.

Although prisoners do not have a right to act as inmate legal advisors or "jailhouse lawyers," an inmate seeking to vindicate his First Amendment right of access to the courts may have a right to an inmate advisor, if necessary, to vindicate his right of access to the courts." Smith v. Campbell, 250 F.3d 1032, 1037 n.1 (6th Cir. 2001). Here, however, the Plaintiff has been quite prolific in his written communication to the Court. It is apparent that he does not need a jailhouse lawyer to ensure his access to the Court. "A jailhouse lawyer's right to assist another prisoner is wholly derivative of that prisoner's right of access to the courts; prison officials may prohibit or limit jailhouse lawyering unless doing so interferes with an inmate's ability to present his grievances to a court." Smith v. Baugh, No. 3:05-cv-0860, 2007 WL 3179315, at *4 (M.D. Tenn. Oct. 26, 2007). Here, the Plaintiff is held in solitary confinement which is the likely reason why the Plaintiff does not have unfettered access to a jailhouse lawyer as inmates in the general population enjoy. For these reasons, the Court will deny the Plaintiff's motion to order.

## X. Conclusion

As set forth above, only the allegations involving the denial of medical treatment and the restrictions on telephone calls will be allowed to proceed in this case against Defendants Holloway, Fitz, Middleton, Agnew, Jones, Deberry, Rose, Parker, Bartlett, Fisher, Schofield, and Parker in their individual capacities. All other claims and Defendants will be dismissed with prejudice, with the exception of the Plaintiff's excessive force claims, which will dismissed without prejudice. Further, this dismissal is without prejudice to the Plaintiff's ability to pursue any remedies available to him by way of a petition for writ of *habeas corpus*.

The Plaintiff's motion for a temporary restraining order will be denied, as will the Plaintiff's motions for the appointment of counsel, "to proceed with U.S. Marshals Receivership With Urgency," and "to order TDOC/Commissioner Schofield to comply."

An appropriate order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE